JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Genaro Mendoza, on behalf of himself and all others similarly situated,

**DEFENDANTS**

Caesars Entertainment, Inc.

**(b)** County of Residence of First Listed Plaintiff   San Diego, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Clark, NV
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*

Kevin Riechelson, Esq., Cohen & Riechelson, 3500 Quakerbridge Rd., Suite 203, Hamilton, NJ  086129

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                           *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. Section 2710

Brief description of cause:
Video Privacy Protection Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
5,000,000.00 +

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   7/5/2023

SIGNATURE OF ATTORNEY OF RECORD   *K. Riechelson*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP? _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GENARO MENDOZA, on behalf of himself and
all others similarly situated,

**Case No.**

Plaintiff

**CLASS ACTION COMPLAINT**

vs

**JURY TRIAL DEMANDED**

CAESARS ENTERTAINMENT, INC.

Defendant

Plaintiff Genaro Raziel Santos Mendoza, by and through his attorneys, for his Complaint against Defendant Caesars Entertainment, Inc., alleges and states as follows:

### INTRODUCTION

1.      Plaintiff, on behalf of himself and all others similarly situated **("Plaintiff"),** brings this class action in relation to Defendant disclosing Plaintiff's personally identifiable information ("**PII**") without Plaintiff's consent.

2.      Plaintiff is a subscriber of Defendant's website, www.caesarscasino.com (the "**Website**"), which offers a wide array of video content, namely video games.

3.      When Plaintiff played video games on Defendant's Website, Plaintiff's PII was shared with Facebook without first notifying Plaintiff and without his consent.

4.      Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "**VPPA**") each time it knowingly disclosed Plaintiff's PII to Facebook without consent.

5.      Defendant is liable to Plaintiff for statutory damages in an amount not less than $2,500 for each disclosure of PII, punitive damages, attorneys' fees and costs.

1

**PARTIES**

6.     Plaintiff Genaro Mendoza is an individual that is over 18 years old and resides in San Deigo, California. Plaintiff is a subscriber of Defendant's Website and accessed video content on the Website (i.e., video games).

7.     Defendant Caesars Entertainment, Inc. is a Delaware corporation with its principal place of business at 1 Caesars Palace Drive, Las Vegas, Nevada. Defendant developed, owns, and/or operates the Website.

**JURISDICTION AND VENUE**

8.     This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there is minimal diversity in citizenship between at least one class member and Defendant, there are 100 or more Class Members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under a law of the United States, namely the VPPA.

10.    Venue is proper in this Court because Defendant's Terms & Conditions specify jurisdiction and venue as the courts in the State of New Jersey.[1]

11.    Further, Defendant conducts transactions and business in New Jersey, it advertises in New Jersey, and its Website is available and accessed in New Jersey. Defendant expects to be haled into a New Jersey court and took affirmative steps to ensure New Jersey jurisdiction and venue.

---

[1] https://www.caesarscasino.com/signup/terms-and-conditions/ (accessed Sept. 14, 2022) ("This Agreement including the Additional Rules and Privacy Policy and the relationship between the parties shall be governed by, and interpreted in accordance with, the laws of the State of New Jersey. You hereby consent to the exclusive jurisdiction of the courts in the State of New Jersey to resolve any disputes arising out of Internet or mobile gaming.").

## GENERAL ALLEGATIONS

### Defendant's Website and Subscribers

12.     Defendant is a casino-entertainment company that developed, owns, and/or operates the Website, which receives thousands of visits each week.

13.     The Website provides a wide array of video content in the form of video games.

14.     Defendant has thousands of subscribers who access video games on the Website.

15.     Individuals subscribe to Defendant's Website using their email address, name, gender, date of birth, and other contact information:[2]



---

[2] https://www.caesarscasino.com/signup/ (accessed Sept. 14, 2022).

3



16.     When someone becomes a subscriber to Defendant's Website, they receive recurring notifications and/or emails from Defendant with links to Website video games.

**Facebook and Facebook Pixel**

17.     Facebook "require[s] people to connect on Facebook using the name that they go by in everyday life",[3] such that a person can be personally identified by their Facebook account.

18.     When someone creates a Facebook account, a corresponding Facebook ID ("**FID**") is also created.

19.     FIDs are uniquely associated with particular Facebook accounts, such that an FID can be used to identify and view the associated Facebook profile. Accordingly, FIDs are PII.

20.     Defendant monetizes its Website by knowingly collecting and disclosing its subscribers' PII to Facebook, including data that personally identifies subscribers and the video content/games they access.

21.     Defendant's Website uses a code analytics tool called "Facebook Pixel", which was implemented at the discretion of Defendant.

---

[3] https://transparency.fb.com/en-gb/policies/community-standards/account-integrity-and-authentic-identity/ (accessed Sept. 14, 2022).

22.     Facebook Pixel tracks the actions of Website visitors (subscribers), such as the pages a visitor views and the content they access.

23.     When someone plays a video game on Defendant's Website, the video game name and the viewer's FID are simultaneously sent to Facebook via Facebook Pixel.

24.     For example, this occurs when someone visits Defendant's Website and plays the online gambling video game, "Cleopatra II":



25.     Once a visitor clicks on and plays this video game, the viewer's FID, which is represented by the "c_user" cookie, is sent to Facebook via Facebook Pixel:

METHOD: GET

URL

+ https://www.facebook.com/tr/?id=1676303012610789&ev=Microdata&d
l=https%3A%2F%2Fwww.caesarscasino.com%2Fgames%2Fslots%2Fcleopatra
2%2Fplay%2Ffree%2F&rl=https%3A%2F%2Fwww.caesarscasino.com%2F&if=
false&ts=1648553176133&cd[DataLayer]=%5B%5Dcd[Meta]=%7B%22title%
22%3A%22Cleopatra%20II%20%7C%20Online%20Slots%20%7C%20CaesarsCasi
no.com%22%2C%22meta%Adescription%22%3A%22Are%20you%20ready%20to%
20try%20for%20treasures%20fit%20for%20a%20pharaoh%3FCleopatra%20I
I%20offers%30all%20of%20the%20opulence%20and%20riches%20of%20the%
20original%20Cleopatra%2C%20including%20a%202%202%20symbol%20
that%26can%20double%20awards.%20%20But%20it%20also%20features%20
a%20powerful%20new%20Free%20Spins%20Bonus%20with%20an%20ever-grow
ing%20bonus%20award%20multiplier%20up%20to%2050x!%22%2C%22meta%3A
keywords%22%3A%2.Cleopatra%20II%2C%20slots%2C%20casino%C%20mobil
e%2C%20HTML5%2C%20video%22%7d%2C%20caesarscasino%2C%2D%2Copengraph]=%7B%
7Dcd[Schema.org]=%5B%5Dcd[JSON-LD]=%5B%5D&sw=1920&sh=1080&v=2.
9.5?&r=stable&ec=1&o=308?bp=fb.1.1648552941797.1439202419&it=1648
553174267&coo=false&es=automatic&tm=3&rqm=GET

HEADERS

+ accept:                image/avif,image/webp,image/apng,image/svg+
                        xml,image/*,*/*;q=0.8
+ accept-encoding:      gzip, deflate, br
+ accept-language:      en-US,en;q=0.9
+ connection:          keep-alive
+ cookie:              sb=HutCYqrwFqqRfGdM62Y5DG-1;
                       datr=HutrVpKTi_U2IiXESE?rt-kv;
                       c_user=117
                       XS=29%3AFT6BUPVC3jGf2Q%3A2%3A1648552759%3A-
                       1%3A15160;

26.     Facebook Pixel simultaneously discloses to Facebook the URL that a viewer has accessed (e.g. "www.caesarscasino.com") and video game name/content (e.g. "**Cleopatra**%20**II**%2C%20**slots**%2C%20**casino**").

27.     With the URL and video game name/content, someone can simply enter that data into a browser and they will know what video game a person accessed/played.

28.     The "c_user" cookie that is transmitted by Facebook Pixel contains a viewer's unencrypted FID.

29.     A Facebook profile can be identified and viewed by appending an FID to the end of "Facebook.com", such that a person can be identified by their FID.

30.     When a URL, video game name/content, and an FID are simultaneously disclosed, the video material accessed by a specific individual can be determined.

31.     Defendant knew that the URL, video game name/content, and FID of its subscribers is simultaneously disclosed by Facebook Pixel when subscribers access video games on its Website.

32.     Defendant also knew that such data may be used together to reconstruct subscribers' PII, thereby identifying subscribers and the video games they accessed.

33.     Defendant did not obtain the consent of Website visitors to disclose their PII or the video games they accessed.

34.     Visitors to Defendant's Website are not given an opportunity to withdraw from or prohibit the disclosure of their PII or the video game content they access.

35.     The disclosure of visitors' PII and/or the video game content they accessed is not incident to the ordinary course of business of Defendant (i.e. it is not for debt collection, order fulfillment, request processing, or the transfer of ownership).

36.     The surreptitious disclosure of PII paired with the name of video game content that an individual accessed is an outrageous invasion of privacy and would be offensive to a reasonable person.

### The Video Privacy Protection Act

37.     In recognition of this, Congress passed the VPPA so that individuals can "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, pg. 8.

38.     The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d)." 18 U.S.C. § 2710(b)(1).

39.     Under the VPPA, "the term 'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials..." 18 U.S.C. § 2710(a)(4).

40.     Video games are audio visual materials.

41.     An entity that provides video games to consumers is a video tape service provider under the VPPA.

42.     Under the VPPA, "the term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

43.     Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

44.     Where a video tape service provider knowingly discloses the PII of a consumer without consent, the aggrieved person may bring a civil action for, *inter alia*, statutory damages in an amount not less than $2,500, punitive damages, attorneys' fees and costs. 18 U.S.C. § 2710(c)(2)(A)-(D).

## PLAINTIFF'S USE OF DEFENDANT'S SERVICES

45.     Plaintiff has been a subscriber of Defendant's Website since 2019.

46.     Plaintiff has had a Facebook account at all times since subscribing to the Website, which he is perpetually logged into.

47.     Plaintiff subscribed to the Website using his personal email address.

48.     Plaintiff's email address and Facebook profile each contain his name, whereby Plaintiff can be personally identified by that information.

49.     Since becoming a subscriber, Plaintiff has regularly played video games on the Website such as the slots game, Lucky 7.

50.     When playing video games on the Website, Plaintiff uses the same device and/or browser in which he is logged into his Facebook account

51.     Each time Plaintiff played a video game on the Website, Defendant simultaneously disclosed Plaintiff's FID and the name of the video game that he accessed to Facebook via Facebook Pixel.

52.     This paired information personally identifies Plaintiff and the video material that he requested, obtained, accessed, and/or played on the Website.

53.     Plaintiff did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff's consent in a form separate and distinct from other legal obligations.

54.     Defendant did not provide Plaintiff with an opportunity to withdraw from the disclosure of his PII.

55.     Defendant's disclosure of Plaintiff's PII was not related to an ordinary course of business (e.g. debt collection, order fulfillment, request processing, or any transfer of ownership).

## CLASS ALLEGATIONS

### A.  Definition of the Class

56.     Plaintiff brings this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class Members**"). Plaintiff seeks to represent a Class of persons preliminarily defined as:

> **All persons in the United States who have a Facebook account, subscribed to Defendant's Website, and played one or more video games on the Website.**

This definition is subject to modification as discovery discloses further information. Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

9

57.     This case is properly maintainable as a class action pursuant to and in accordance

with Fed. R. Civ. P. 23 in that:

   a)  The Class, which includes thousands of members, is so numerous that joinder of all
       Class Members is impracticable;

   b)  There are substantial questions of law and fact common to the Class, including those
       set forth in greater particularity herein;

   c)  Questions of law and fact, such as those enumerated below, which are common to
       the Class, predominate over any questions of law or fact affecting only individual
       members of the Class;

   d)  The claims of the representative party are typical of the claims of the Class;

   e)  A class action is superior to any other type of action for the fair and efficient
       adjudication of the controversy;

   f)  The relief sought in this class action will effectively and efficiently provide relief
       to all members of the Class;

   g)  There are no unusual difficulties foreseen in the management of this class action;
       and

   h)  Plaintiff, whose claims are typical of those of the Class, through his experienced
       counsel, will zealously and adequately represent the Class.

**B.  Numerosity**

58.     There are thousands of individuals who are subscribers of the Website and have

accessed video games on the Website. Accordingly, the Class Members are so numerous that

joinder of all parties is clearly impracticable.

59.     The prosecution of separate lawsuits by Class Members would risk inconsistent or

varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

**C.  Commonality**

60.     Numerous common questions of law and fact predominate over any questions

affecting individual Class Members including, but not limited to, the following:

   a)  Whether Defendant collected PII of Class Members who visited its Website;

10

b) Whether Defendant disclosed PII of Class Members who accessed video games on its Website;

c) Whether disclosure of PII via Facebook Pixel constitutes "knowing disclosure";

d) The nature and extent of PII disclosed;

e) How PII was disclosed and to whom;

f) Whether Defendant obtained informed written consent before disclosing PII of subscribers;

g) Whether Defendant's Website provided a clear and conspicuous opportunity for subscribers to withdraw from disclosure; and

h) Whether the disclosures of Class Members PII warrants punitive damages.

**D. Typicality**

61.    Plaintiff has the same interests in this matter as all other members of the Class and his claims are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

62.    The claims of the Plaintiff and other Class Members have a common cause and their damages are of the same type. The claims originate from the synonymous disclosure of PII by Defendant without consent.

63.    All Class Members have been aggrieved by Defendant's disclosure of their PII without consent and are entitled to, *inter alia*, statutory damages.

**E. Adequacy of Representation**

64.    Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiff

11

as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and he does not have interests adverse to the Class.

65.     Plaintiff has retained the services of counsel who are experienced in complex class action litigation. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiff and all absent Class Members.

**F.   Class Treatment is the Superior Method of Adjudication**

66.     A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f) The Plaintiff seeks relief relating to the Defendant's common actions and the equitable relief sought would commonly benefit the Class as a whole;

g) The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

h) The proposed class action is manageable.

## CAUSE OF ACTION I

### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710

67.     Plaintiff restates all allegations of this Complaint as if fully restated herein.

68.     Defendant, through its Website, is engaged in the business of delivering audio visual materials (i.e. video games) to the Plaintiff and Class in multiple states and across state borders, thus Defendant is a "video tape service provider" under the VPPA.

69.     The Plaintiff and Class are consumers under the VPPA because they are subscribers of Defendant, a video tape service provider, and have accessed video games on Defendant's Website.

70.     When the Plaintiff and Class Members accessed video games on Defendant's Website, Defendant knowingly disclosed their FIDs and the name of the video game/content that they accessed to Facebook via Facebook Pixel.

71.     The disclosed information is PII because Facebook and anyone with access to that information can personally identify the Plaintiff and Class Members, as well as the video content that each of those respective individuals viewed.

72.     The Plaintiff and Class did not consent to Defendant disclosing their PII.

73.     Defendant did not provide an opportunity for the Plaintiff and Class to withdraw from the disclosure of their PII.

74.     Defendant's disclosure of the Plaintiff's and Class' PII was not in the ordinary course of business.

75.     Defendant is liable to the Plaintiff and Class for statutory damages of not less than $2,500 for each disclosure of their PII, punitive damages, attorneys' fees and costs.

13

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of the proposed Class, prays for

judgment as follows:

A. Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B. Designation of the Plaintiff as representative of the proposed Class and designation of his counsel as Class counsel;

C. Judgment in favor of the Plaintiff and Class Members as against the Defendant;

D. An award to each Plaintiff and Class Member for statutory damages not less than $2,500 and punitive damages, including pre- and post-judgment interest;

E. An award of injunctive relief prohibiting Defendant from disclosing the PII of its subscribers without consent and in accordance with the VPPA;

F. An award of attorneys' fees and costs, including pre- and post-judgement interest;

G. An Order holding that Defendant's disclosure of the Plaintiff's and Class' PII without consent was in violation of the VPPA; and

H. Such further relief that this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure of all issues so triable.

Respectfully submitted,

Cohen & Riechelson

Kevin S. Riechelson

3500 Quakerbridge Road
Suite 203
Hamilton, NJ 08619
kriechelson@crlawoffices.com
609-394-8585 (P)
609-394-8620 (F)

Nicholas A. Coulson*
Lance Spitzig*
*pro hac vice to be submitted
**LIDDLE SHEETS COULSON P.C.**
975 East Jefferson Avenue
Detroit, MI 48207-3101
T: (313) 392-0015
E: ncoulson@lsccounsel.com
E: lspitzig@lsccounsel.com

*Attorneys for the Plaintiff and Putative Class*

Date: July 5, 2023