UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**GENARO MENDOZA**,

*Plaintiff,*

v.

**CAESARS ENTERTAINMENT,
INC.**,

*Defendant.*

No. 23-cv-03591

**OPINION**

APPEARANCES:

**Kevin S. Riechelson**
COHEN & RIECHELSON
3500 Quakerbridge Road, Ste. 203
Hamilton, NJ 08619

*On behalf of Plaintiff*

**Camille Joanne Rosca**
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W. 52nd St
New York, NY 10019

*On behalf of Defendant*

**O'HEARN, District Judge.**

This matter comes before the Court upon a Motion to Dismiss filed by Caesars Entertainment, Inc. ("Defendant"), (ECF No. 13). For the following reasons, Defendant's Motion is **GRANTED**.

## I.      BACKGROUND

Caesar's Entertainment is a casino and entertainment company that owns and operates the website www.caesarscasino.com ("Defendant's Website" or the "Website"). (Pl.'s Compl., ECF No. 1, ¶ 12). The Website offers online video games, such as virtual slots and roulette. (ECF No. 1, ¶¶ 13, 24). Users create accounts on the Website using their email address, name, gender, birthday, and other contact information. (ECF No. 1, ¶ 15). When users create accounts, they receive recurring communications, including emails from Defendant that include links to the

Website. (ECF No. 1, ¶ 16).

Defendant's Website incorporates an analytics tool called Facebook Pixel into its code. (ECF No. 1, ¶ 21). Facebook Pixel transmits users' Facebook IDs—unique electronic identifiers that connect users to their Facebook profiles—together with data regarding their activity on the Website to Facebook. (ECF No. 1, ¶¶ 23, 25, 26). The combination of usage data and Facebook IDs allows Facebook to reconstruct specific users' activity on the Website. (ECF No. 1, ¶ 52).

Plaintiff first used his personal email address to sign in to Defendant's Website in 2019 and regularly plays video games on the Website. (ECF No. 1, ¶¶ 45–47). Each time Plaintiff plays a video game on the Website, Defendant—through Facebook Pixel—discloses Plaintiff's Facebook ID and the game he was playing to Facebook. (ECF No. 1, ¶ 23). Plaintiff never consented to disclosure of his information. (ECF No. 1, ¶ 53).

## II.   PROCEDURAL HISTORY

On July 5, 2023, Plaintiff filed a Class Action Complaint on his own behalf and on behalf of a putative class of users of Defendant's Website, asserting a single claim against Defendant for violation of the Video Privacy Protection Act (the "VPPA" or the "Act"). (ECF No. 1). Defendant filed the Motion to Dismiss now before the Court on October 2, 2023. (ECF No. 11). Plaintiff filed Opposition on October 24, 2024. (ECF No. 13). Defendant replied on October 30, 2024. (ECF No. 14). On April 3, 2024, Plaintiff submitted a Letter with supplemental authority. (ECF No. 18).

## III.   LEGAL STANDARD

A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion to dismiss, a district court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)

(quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions"); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* ... provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). In deciding a Rule 12(b)(6) Motion, the court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff brings a single cause of action alleging that Defendant violated the VPPA by installing Facebook Pixel on its Website and using that application to transmit to Facebook data identifying which games he and other similarly situated parties played online. Congress passed the VPPA in 1988 to prohibit video cassette tape rental stores from disclosing to third parties which movies customers rented. *See In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 279 (3d Cir. 2016) (describing the history and purpose of the VPPA). Congress intended the VPPA to be flexible and acknowledged that changing technology would require courts to apply the Act to then-unforeseeable media. *Louth v. NFL Enters.*, No. 21-405, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (surveying evidence that Congress intended the VPPA to apply to changing audio-visual technology). Indeed, Courts have since applied the VPPA to video streaming providers and other modern platforms that Congress could not have anticipated in 1988. *See, e.g.*, *In re Hulu Privacy Litig.*, No. 11–03764, 2012 WL 3282960, at *5 (N.D. Cal. Aug. 10, 2012) (hereinafter "*In re Hulu (2012)*)) (finding the VPPA applies to an online video streaming service provider). However, in arguing that the Act applies to online casino games—a medium far attenuated from the video cassette tapes that motivated the Act's original passage—Plaintiff urges an interpretation

3

of the VPPA that stretches these flexible terms too far. And even if the Act did apply to Defendant's Website, Plaintiff fails to allege that he meets the definition of a consumer of Defendant's audio-visual offerings under the Act. Accordingly, the VPPA offers Plaintiff no relief under the facts alleged.

To state a claim under the VPPA, plaintiffs must show (1) the defendant is a "video tape service provider" who (2) "knowingly discloses . . . personally identifiable information" that (3) "concern[s] any consumer of such provider." 18 U.S.C. § 2710(b)(1); *see In re Nickelodeon*, 827 F.3d at 279. Defendant moves to dismiss on the grounds that Plaintiff fails to plead facts satisfying any of these criteria. The Court agrees that Plaintiff fails to plead facts alleging Defendant is a video tape service provider under the VPPA. And while Plaintiff does sufficiently plead that Defendant knowingly disclosed his personally identifiable information to a third party, he fails to adequately plead that he is a consumer under the Act. Plaintiff has thus failed to state a claim upon which relief can be granted, and his Complaint must, therefore, be dismissed.

**A. Plaintiff Fails to Plead Sufficient Facts to Allege that Defendant is a Video Tape Service Provider Under the VPPA**

Plaintiff fails to plead sufficient facts to plausibly allege that Defendant is a video tape service provider under the VPPA. Specifically, Plaintiff fails to allege that Defendant's online casino games are sufficiently akin to video tapes for the statute to apply to Defendant.

The VPPA defines "video tape service provider" as an entity "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials." 18 U.S.C. § 2710(a)(4). Plaintiff does not allege that Defendant engages in the business of the rental, sale or delivery of prerecorded video cassette tapes. Rather, Plaintiff alleges that Defendant qualifies as a video tape service provider because the video games on its Website are audio-visual materials similar to video tapes under the VPPA. At least one other court in this Circuit has found

that audio-visual material is similar to video tapes if the material includes prerecorded videos. *Buechler v. Gannett Co.,* No. 22-1464, 2023 WL 6389447, at *2 (D. Del. Oct. 2, 2023) ("A prerecorded video on a website is an audio-visual medium that a jury could reasonably find to be similar to a prerecorded video cassette tape."). This finding reflects the apparent consensus of courts beyond this Circuit that audio-visual materials must include some prerecorded video content to trigger application of the VPPA. *See, e.g.,* *Aldana v. GameStop, Inc.*, No. 22-7063, 2024 WL 708589, at *6 (S.D.N.Y. Feb. 21, 2024) ("Plaintiffs have plausibly pled that GameStop is a 'video tape service provider' under the VPPA by alleging GameStop sold video games that include cut scenes."); *In re Hulu (2012)*, 2012 WL 3282960, at *5 (finding plaintiffs plausibly alleged that online video streaming service was a video tape service provider under the VPPA because streaming content included prerecorded videos and was therefore similar to videotapes); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022) (finding plaintiffs did not "sufficiently allege[] that [the defendant] provided 'similar audio visual materials'" under the VPPA because, the "complaint include[d] numerous references to 'videos' and 'video content'" but failed to "specify whether they were broadcast live or prerecorded"); *Louth*, 2022 WL 4130866, at *4 ("NFL Enterprises' Motion to Dismiss the plaintiff's VPPA claims is granted to the extent they rely upon the consumption of live content but denied as to pre-recorded content."); *see also Walker v. Meta Platforms, Inc.*, No. 22-02442, 2023 WL 3607282, at *6 (N.D. Cal. Mar. 3, 2023) (explaining "courts have uniformly declined to interpret 'similar audio visual materials' as covering " video material that is not prerecorded) (collecting cases).

*Louth v. NFL Enterprises* provides a persuasive and thorough analysis of this reasoning. There, the court found that a provider of live sports broadcasts was not a video tape service provider because the broadcasts were not prerecorded and thus not similar to video tapes the

VPPA. 2022 WL 4130866, at *4. In concluding that audio-visual material must be prerecorded to

be covered under the Act, the *Louth* Court reasoned:

> The adjective "prerecorded" modifies both "video cassette tapes" and "similar
> audio visual materials" [in the text of VPPA]. This is confirmed in a Senate Report
> recommending passage of the VPPA, specifically identifying "laser discs, open-
> reel movies, and CDI technologies," as the types of technologies that provide
> "similar audio visual materials," beyond video cassette tapes. This Report "suggests
> Congress' intent to cover new technologies for pre-recorded video content."

2022 WL 4130866, at *4 (internal citations and punctuation omitted). The court is persuaded by

the analysis in *Louth* and similar cases and concludes that audio-visual material is only similar to

video cassette tapes under the VPPA if it includes prerecorded video content.

The Court is aware of only one other case applying this standard to video games.[1] In *Aldana*

*v. GameStop*, the court found that the plaintiff sufficiently alleged that a chain of video game stores

was a video tape service provider under the Act because the plaintiff specifically alleged that many

of the games it sold included "cut scenes," or short, prerecorded videos intercut with the games'

interactive elements. 2024 WL 708589, at *6. The *Aldana Court* reached this conclusion because

the alleged "cut scenes" are similar to prerecorded video clips that other courts determined were

---

[1] In his Opposition to Defendant's Motion to Dismiss, (ECF No. 13), Plaintiff cites *Cappello v. Walmart Inc*, 394 F. Supp. 3d 1015 (N.D. Cal. 2019); *Cantu v. Tapestry, Inc.*, No. 22-1974, 2023 WL 4440662 (S.D. Cal. July 10, 2023); and *Tawam v. Feld Entm't, Inc.*, No. 23-3572023, 2023 WL 5599007, at *4 (S.D. Cal. July 28, 2023) as support for the proposition that video games are similar enough to video tapes to bring their providers under the VPPA. *Cappello* does not address this question, and merely notes that defendant's website sold "DVDs, Blu-ray Discs, video games, and other video media" in describing its business. 394 F. Supp. 3d at 1017. *Cantu* and *Tawam* simply describe the holding in *Cappello*. 2023 WL 4440662, at *8; 2023 WL 5599007, at *4. Accordingly, none of these cases provide support for Plaintiff's position. In his Letter providing supplemental authority, (ECF No. 18), Plaintiff cites *Collins v. Toledo Blade*, No 23-302, 2024 WL 1094613 (N.D. Ohio March 13, 2024) as additional authority for the same proposition. *Collins* concerned a website that posted prerecorded news clips and found the content that included these clips similar enough to video tapes for the VPPA to apply. *Id.* at *1. This case is thus consistent with the majority view, and the Court's decision here, that audio-visual material must include prerecorded content to qualify as similar to video tapes under the VPPA and thus provides no support for Plaintiff's position.

sufficiently like videotapes to be covered under the VPPA. *Id.* (citing, *inter alia*, *Golden v. NBCUniversal Media, LLC*, No. 22-9858, 2023 WL 5434378, at *4 (S.D.N.Y. Aug, 23, 2023) (collecting cases finding providers of prerecorded video clips are video tape service providers)).

Here, Plaintiff has not alleged sufficient facts to demonstrate that the video games offered on Defendant's Website are sufficiently similar to videotapes to render Defendant a video tape service provider under the VPPA because he has not alleged the games include any prerecorded content. Plaintiff merely alleges in conclusory fashion that Defendant's Website "provides . . . video content in the form of video games" and that "an entity that provides video games to consumers is a video tape service provider" but alleges no facts in support of these conclusory allegations. (ECF No. 1, ¶¶ 12, 42). Unlike the plaintiff in *Aldana*, Plaintiff does not allege that Defendant's video game offerings include prerecorded content such as "cut scenes." And like the plaintiff in *Louth*, Plaintiff fails to allege that the Defendant offers any prerecorded content whatsoever. Accordingly, Plaintiff fails to plead sufficient facts that the Defendant's Website is covered under the VPPA.

### B. Plaintiff Pleads Sufficient Facts to Allege Defendant Knowingly Disclosed His Personally Identifiable Information to a Third Party

Plaintiff pleads sufficient facts to plausibly allege that Defendant knowingly disclosed his personally identifiable information to a third party under the VPPA. Specifically, Plaintiff alleges that Defendant knowingly transmitted his Facebook ID and records of his activity on the Website to Facebook.

Personally identifiable information under the VPPA "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C § 2710(a)(3). A defendant knowingly discloses personally identifiable information to a third party under the Act by transmitting "information that would readily permit

an ordinary person to identify a particular individual's video watching behavior" with the knowledge that the recipient can use the information in such a way. *See In re Nickelodeon*, 827 F.3d 262, 267. At least one Court in this Circuit has found that the disclosure of a Facebook ID may constitute the transmission of personally identifiable information under the VPPA. *See Braun v. Phil. Inquirer, LLC*, No. 22-4185, 2023 WL 7544160, at *4 (E.D. Pa. Nov. 13, 2023) ("Most, if not all, courts to address the question have found, at the pleadings stage, that Facebook IDs are personal identifiable information.") (collecting cases). And courts beyond this Circuit have reached an apparent consensus that a provider knowingly discloses personally identifiable information to a third party under the VPPA by running Facebook Pixel on its website. *See, e.g., Jackson v. Fandom, Inc.*, No. 22-04423, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (finding plaintiff "plausibly allege[d] the disclosure of PII under the VPPA" by alleging defendant incorporated Facebook Pixel into the code of its website); *Feldman v. Star Tribune Media Co. LLC*, 659 F. Supp. 3d 1006, 1020–1021 (D. Minn. Mar. 7, 2023) (finding "the Complaint's allegations . . . plausibly show that [the defendant] disclosed information connecting [the plaintiff] to video material he requested" because the defendant "chose to implement Facebook Pixel on its website") (internal punction omitted); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 314–315 (D. Mass. 2022) ("Plaintiff alleges throughout the complaint that defendant inserted the [Facebook Pixel] code into [its] website to transmit users' information to Facebook. Accepting the factual allegations as true and drawing reasonable inferences in the plaintiff's favor, the Court finds that it is plausible Gannet disclosed PII under the VPPA."); *Czarnionka v. The Epoch Times Ass'n, Inc.*, No. 22-6348, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (finding plaintiff's allegations that "Defendant's installation of [Facebook] Pixel exposed its subscribers' information to Facebook" were "sufficient to [allege] 'disclosure' under the VPPA"); *Stark*, 635 F. Supp. 3d

at 852–54 (finding "Plaintiffs . . . sufficiently alleged the disclosure of personally identifying information" where they alleged defendant incorporated Facebook Pixel into its website).[2]

*For example, in Czarnioka v. Epoch Times* the court denied a motion to dismiss finding that a Facebook ID constitutes personally identifiable information because it "represents a particular individual" and thereby links an internet user to his or her real-world identity. 2022 WL 17069810, at *3. The *Czarnioka* Court further reasoned that by incorporating Facebook Pixel into the code of its website with the knowledge that the application transmitted users' Facebook IDs and video watching activity to Facebook, it knowingly disclosed personally identifiable information to Facebook under the VPPA because Facebook can easily compile this information to discern users' video-watching activity. *Id.* at *4.

Here, Plaintiff pleads sufficient facts to support the allegation that Defendant transmitted his information to a third party in violation of the Act. Plaintiff alleges that Defendant incorporated Facebook Pixel into the code of its Website and used that application to transmit his Facebook ID and Website activity to Facebook. (Pl.'s Compl., ECF No. 1, ¶¶ 21–23). Plaintiff further alleges that the combination of this information enables Facebook to identify his personal activity on the Website. He therefore pleads facts sufficient to support the allegation that Defendant knowingly

---

[2] Defendant cites *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (hereinafter *In re Hulu (2015)*) as authority for the proposition that it did not transmit Plaintiff's personally identifiable information to a third party. *In re Hulu (2015)* considered whether the defendant transmitted personally identifiable information to Facebook through a system by which users could "like" video content on defendant's website, and thereby transmit the "like" to their Facebook profile. *Id.* at 1094. The *Hulu (2015)* Court found this system did not knowingly transmit personally identifiable information because the defendant could not know that Facebook would use any transmitted information to track users' viewing activity on the its website. *Id.* at 1105. This system is similar but not identical to the Facebook Pixel application described here. *In re Hulu (2015)* therefore does not provide authority contradicting the many cases that have specifically found websites installing Facebook Pixel—the exact technology here at issue—knowingly transmit users' personally identifiable information, at least at the pleading stage.

disclosed his personally identifiable information to a third party under the VPPA.

## C. Plaintiff Fails to Plead Sufficient Facts to Plausibly Allege that He Is a Consumer Under the VPPA

Plaintiff fails to plead sufficient facts to plausibly allege that he qualifies as a "consumer"

under the VPPA. Specifically, even if Defendant is a video tape service provider under the VPPA,

he fails to sufficiently plead that he subscribed to audio-visual content distributed by Defendant.

Under the VPPA, "the term 'consumer' means any renter, purchaser, or subscriber of goods

or services from a video tape service provider." 18 U.S.C. § 2701(a)(1). Plaintiff pleads only that

he qualifies as a "subscriber" under this standard and does not plead that he is a "renter" or

"purchaser."[3] The leading case on qualification as a "subscriber" under the VPPA—the Eleventh

Circuit's decision in *Ellis v. Cartoon Network*—holds that a subscription requires, at a minimum,

"some type of commitment, relationship, or association (financial or otherwise) between a person

and an entity." *Ellis v. Cartoon Network*, 803 F.3d 1251, 1256 (11th Cir. 2015). A majority of

courts to consider the issue have held that, beyond this minimum requirement, qualifying as a

"subscriber" under the VPPA requires plaintiffs to show they specifically subscribed to audio-

visual materials and not just to other offerings like newsletters or emails. *See, e.g.*, *Collins v.*

*Toledo Blade,* No. 23-302, 2024 WL 1094613, at *6 (N.D. Ohio March 13, 2024) (finding plaintiff

sufficiently alleged he qualified as a subscriber under the VPPA because he alleged that his

subscription granted access to video material); *Gardener v. MeTV*, 681 F. Supp. 3d 864, 869 (N.D.

Ill. 2023) (finding plaintiffs failed to sufficiently allege they were subscribers under the VPPA

---

[3] Plaintiff argues in his Opposition to the Motion to Dismiss that he is also a renter and/or purchaser of Defendant's casino gambling video games. (ECF No. 13). The Complaint alleges only in conclusory fashion that he is a subscriber and includes no factual allegations that he is either a renter or a purchaser. Plaintiff's argument therefore constitutes an impermissible attempt to expand the Complaint through briefing and will be disregarded. *See Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) ("[It is] axiomatic that the complaint may not be amended by the briefs . . . .").

where they alleged that they created accounts on defendant's website, but these accounts did not

provide access to video content); *Salazar v. Nat'l Basketball Ass'n,* No. 22-07935, 2023 WL

5016968, at *8 (S.D.N.Y. Aug. 7, 2023) (finding at the pleading stage that "Plaintiff's subscription

to Defendant's newsletter [did not] render[] him a consumer of goods or services from a video tape

service provide under the VPPA" because a "subscriber under the VPPA consumes . . . audio visual

materials, not just any products or services from a video tape services provider"); *Salazar v.*

*Paramount Glob.*, 683 F. Supp 3d 727, 745 (M.D. Tenn. 2023) (finding plaintiff who alleged only

that he subscribed to email newsletters distributed by defendant failed to allege that he qualified

as a subscriber because "an individual is a 'subscriber' under the VPPA only when he or she

subscribes to audio visual materials."); *Carter v. Scripps Networks*, 670 F. Supp. 3d 90, 98

(S.D.N.Y. 2023) (finding plaintiffs who subscribed only to defendant's email newsletters failed to

allege they were subscribers under the VPPA because "a reasonable reader would understand the

definition of 'consumer' to apply to a renter, purchaser or subscriber of audio-visual goods or

services and not goods or services writ large"). This view is not universal, however, and at least

one court has found that subscribing to an email list or newsletter only, and not necessarily to

audio-visual material, qualifies a plaintiff as a "subscriber" and thus a "consumer" under the

VPPA. *Harris v. Pub. Broad Serv.*, 662 F. Supp. 3d 1327, 1331–32 (N.D. Ga. 2023) (finding

"Plaintiff has sufficiently alleged she is a subscriber" under the VPPA because "she provided

personal information to Defendant, established an account with Defendant's webpage and received

periodic services from Defendant" and thereby met the criteria set forth in *Ellis*)*; Lebakken v.*

*WEBMD*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) ("[Plaintiff] alleges that she exchanged her

email address to receive the WEBMD e-newsletter . . . . The Court finds that [she] has adequately

pleaded that she was a subscriber under the VPPA.").[4]

For example, in *Carter v. Scripps Networks*, the plaintiffs alleged that they subscribed to the defendant's email newsletters and separately watched videos on the defendant's website. 670 F. Supp. 3d at 92–94. The court held that the plaintiffs failed to sufficiently allege they were subscribers under the VPPA because "the Complaint [did] not include facts that plausibly allege that their status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience." *Id*. at 99. The plaintiffs thus alleged only that they were subscribers to newsletters and email lists, "not subscribers to audio visual materials" that are the focus of the Act. *Id*.; *Gardener*, 681 F. Supp. 3d at 870 (collecting cases in accordance with *Carter* and rejecting holdings in *Harris* and *Lebakken* to the extent they conflict).

By contrast, the *Harris* and *Lebakken* courts reasoned that by providing defendants with their personal information and receiving access to email lists in return, the plaintiffs exchanged their information for otherwise unavailable content and thereby qualified as subscribers under the minimum criteria established in *Ellis. Harris*, 662 F. Supp. 3d 1327 at 1331; *Lebakken*, 640 F. Supp. 3d at 1340. Notably, neither the *Harris* nor *Lebakken* Court considered whether there was an additional requirement beyond this minimum criteria that a subscription grant access to *audio-visual material* to qualify subscribers as consumers under the VPPA.

To the extent *Harris* and *Lebakken* conflict with the majority view, the Court finds the majority's reasoning more persuasive. Thus, Plaintiff must plead specific facts with respect to his subscribing to audio-visual materials covered under the VPPA to qualify as subscriber.

---

[4] Plaintiff also cites *M.K. v. Google LLC*, No. 21-08465, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) for the proposition that a consumer need not specifically subscribe to audio-visual content. The court in *M.K.* repeatedly noted that plaintiff used his account on the defendant's website to access video content that he would not otherwise be able to access. *Id. at* *5. Plaintiff therefore mischaracterizes the holding in *M.K.*, and that case provides no support for his position.

Again, here Plaintiff pleads in only conclusory fashion that he "has been a subscriber of Defendant's Website since 2019" and that subscribers receive "recurring notifications and/or emails from Defendant with links to Website video games." (Pl.'s Compl., ECF No. 1, ¶¶ 16, 45). Plaintiff thus pleads, at best, that he created an account on Defendant's Website and obtained access to emails and other notifications as a result. Plaintiff pleads no facts to suggest a connection between this alleged subscription and access to audio-visual content on the Website. Accordingly, like the plaintiffs in *Carter*, Plaintiff alleges only that he is a subscriber to emails and newsletters and "not [a] subscriber[] to audio visual materials" as required to qualify as a consumer under the VPPA. *Carter*, 670 F. Supp. 3d at 99.

In summary, Plaintiff only pleads facts sufficient to satisfy one of the elements required to state a claim under the VPPA—knowing disclosure of personally identifiable information. He fails to plead facts alleging satisfaction of the other two elements—that Defendant is a video tape service provider and that he is a consumer under the Act. Plaintiff's Complaint thus fails to state a claim upon which relief can be granted and must be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. An appropriate Order accompanies this Opinion.

_Christine P. O'Hearn_

**CHRISTINE P. O'HEARN**
**United States District Judge**

13